Minshall, J.
On June 10, 1890, the directors of The Pittsburgh, Cincinnati & St. Rouis Railway Company, an Ohio corporation with part of its road situated in this state, entered into an agreement with the directors of certain other railway companies for the consolidation of their respective companies under the statutes of this state, the new company to be known as The Pittsburgh, Cincinnati, Chicago & St. Rouis Railway Company. Afterward, in pursuance of proper notice to that effect, this agreement was submitted to, and ratified by, the requisite majority of the stockholders of each company, on August 19,1890, and on the 28th day of the same month, a copy of the agreement was filed in the office of the Secretary of State, and thereby under the provisions of section 3382, Revised Statutes, the several companies, parties to the agreement, became “one companj'-,” possessing in this state all the rights and franchises, and subject to all the restrictions and duties of a railroad company.
Robert Garrett, as surviving partner of Robert. Garret & Son, defendant in error, being the owner of 1728 shares of fifty dollars each in the capital stock of The Pittsburgh, Cincinnati & St. Rouis Railway Company, refused to convert his stock into that of the consolidated company; and not being able to agree with his own, or the new company, as to the value of his shares, applied to a judge of the court of common pleas of Franklin county, for the appointment of arbitrators under the act of April 4, 1890, amending section 3388, and repealing section 3389 of the Revised Statutes. 87 Ohio Raws 159. The principal question presented by the record is, whether, without an agreement with either of the companies to submit the question to arbitration, the stockholder can compel such submission, and have the value of his stock ascertained in that way.
The amendment in substance provides, that a stockholder who refuses to convert his stock into that of the consolidated company, shall be paid its actual value, to be ascertained as therein provided, “such payment to be made before the consolidation takes effect.” And if he and the board of directors of his company cannot agree as to the value, “the parties may submit the question to arbitration * * * by *414 three disinterested persons, to he appointed upon the motion of either of the parties,” by the judge of the court of common pleas of the proper county, to be conducted in conformity to the law regulating arbitrations “so far as the same may be applicable.” It is claimed that the language, “the parties may submit the question to arbitration,” requires that the submission must be by the agreement of both parties. It is, however, evident to our minds, that such is not the proper construction. The language “the parties may submit,” does not necessarily import, that the submission must be the concurrent act of both parties; if both may, it certainly avails as a right to either; and that such is .the intention, becomes clear from the language that immediately follows, that the application for the appointment of arbitrators may be made “ upon the motion of either of the parties.” Either may make the application, not either with the consent or concurrence of the other. This gives to the proceeding an adversary character; and, where either refuses to enter into a submission, changes it from a voluntary, into a compulsory arbitration. This conclusion is emphasized by the provisions of the following section, 8390, which reads as follows: “In all such cases of arbitration the party desiring the arbitration shall give the opposite party at least ten days’ notice of his intention to apply to the judge for the appointment of arbitrators, which notice shall be served in the same manner as is provided for the service of a summons, and shall specify the time and place of the hearing of the application.” This provision, providing as it does, that the proceeding shall be commenced, by giving notice to the other party to be served as a summons, by the party desiring arbitration, is irreconcilable with the claim that it can only be had upon the mutual submission of both parties. And, recurring again to section 3388, we find that either party may .appeal from the decision or award to the court of common pleas of the county in which the arbitration is held, by giving bond, “unless, previous to the arbitration, the parties agree in writing to abide by such award.” This provision further indicates that arbitration may be had against the consent of one of the parties, and when so had *415 an appeal is given. It is improbable that parties would enter into an agreement to arbitrate without an agreement to abide the award. It is the universal chracteristic of a voluntary submission. And the giving of a right to appeal when no such agreement has been made, shows the legislative understanding as to the character of the proceeding authorized by the statute. Unless commenced upon a sub- ' mission entered into by both parties upon a stipulation to abide the award, the proceeding is not properly an arbitration. It is in the nature of a reference, and being compulsory, an appeal is given to the dissatisfied party to the common pleas, where the matter can be determined by due course of law. It is a mode provided for the condemnation of the^ stock of a dissenting stockholder; and, in analogy to many | similar proceedings, as in the taking of private property for a , public road, a summary method is provided for ascertaining , the compensation to be paid the individual for his property i taken, with the right to appeal to a tribunal in which the i compensation can be assessed by a jury, if that made in' the summary mode is unsatisfactory.
As a second defense to the application for the appointment of arbitrators, the companies set forth the making .of the agreement to consolidate by the directors of the different companies between the 10th and 18th of June, 1890; the submission of the agreement to the stockholders of the respective companies for their ratification on August 19, 1890, upon due notice having been previously given, and its ratification by them at that time, and the filing of a copy of the agreement so ratified with the secretary of state, on August 28, 1890, and then aver, that no notice or refusal to convert his stock by Robert Garrett or his firm was given prior to the ratification by the stockholders, nor was any such notice given until long after August 28, 1890; nor was any attempt made to agree with the board of directors of the company as to the value of the stock, or upon arbitrators to whom the question might be submitted. This was demurred to, the demurrer was sustained, and the ruling of the court thereon is assigned for error.
*416 From the first statute to the present, authorizing the consolidation of railroad companies in this state, it has been the policy of the legislature to require payment to be made to a stockholder of the value of his stock, where he refused to convert it into that of the consolidated company. But under the previous legislation this right was only given him where previous to the consolidation he requested it to be done; and, in such cases, its value having been fixed and ascertained by arbitration, voluntary or compulsory, if the party owning the stock refused to receive the amount awarded, the company could deposit the same with the clerk of the court of common pleas of the county in which the arbitration was held, which deposit authorized the parties to proceed to consolidation without further payment to the stockholder. .
The statute has, by the amendment of April 4,1890, been changed in this regard. By the amendment the value of the stock of one who refuses to convert it, must be ascertained and paid him before consolidation takes effect; the provision requiring the stockholder to demand it to be done before consolidation, as a condition to the right, being dropped from the statute. So that under the amendment it became the duty of the company, desiring to enter into the consolidation, to ascertain who, if any, of its stockholders refused to convert their stock into the proposed consolidated company, and to have the value of the stock of any who refused, ascertained and paid them in the manner provided, before the proceeding could be regularly perfected. So that none of the matters stated in this defense are of any avail as against the rights of the defendant in error. The statute fixes no time in which the dissenting stockholder must indicate his refusal to convert his stock into that of the new company. It is the duty of the company of the dissenting stockholder to get his consent, and if it cannot, it must then proceed to condemn the stock, under the provisions of the statute, and to pay its value before the consolidation takes effect. The fact that this was not done before filing a copy of the ratified agreement of consolidation with the secretary of state, and thereby acquiring the status of an *417 incorporated railway company under the laws of this state, ■only shows that the consolidating companies proceeded in ■disregard of the rights of dissenting stockholders in The Pittsburgh, Cincinnati & St. Rouis Railway Company; and, unless a party may take advantage of his own wrong, can be of no avail to the old or new company, as against the rights of such stockholders. As to this claim the old company may be deemed in existence; or the claim may be prosecuted against the new company, which took the property of the old company charged with the payment of its ■debts. Section 3384, Revised Statutes; Compton v. Railway Company, 45 Ohio St., 592.

Judgment affirmed.